# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 6, 2017

Lyle W. Cayce
Clerk

No. 16-30496

GOLDEN NUGGET LAKE CHARLES, L.L.C., formerly known as Ameristar Casino Lake Charles, L.L.C., formerly know as Creative Casinos of Louisiana, L.L.C.,

Plaintiff–Appellee,

v.

W. G. YATES & SONS CONSTRUCTION COMPANY,

Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Louisiana

Before JOLLY, SMITH, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

This case arises out of a construction contract between Plaintiff–Appellee Golden Nugget Lake Charles, LLC ("Golden Nugget") and Defendant–Appellant W.G. Yates & Sons Construction Company ("Yates"). Yates appeals the district court's order dismissing its claim for a statutory lien under the Louisiana Private Works Act (the "LPWA"). The LPWA grants general contractors a privilege—i.e., a lien—to secure payment for their work, but a contractor must preserve the lien by filing a statement of claim or

No. 16-30496

privilege in a timely manner.[1] The district court dismissed Yates's claim to have its lien recognized because Yates did not file a lien statement within the time required by statute. However, we find that because Golden Nugget never filed a notice of substantial completion, Yates's lien statement was timely filed. Accordingly, we REVERSE and REMAND the district court's judgment dismissing with prejudice Yates's claim for a statutory lien and find that Yates has a valid lien against Golden Nugget.

## I. BACKGROUND

Golden Nugget is the owner of the Golden Nugget Lake Charles Hotel & Casino located in Lake Charles, Louisiana (the "Project"). In 2011, Yates entered into a contract with the original owner to construct the Project, which was to be a casino, hotel, and spa. In July 2012, the parties recorded a written notice of contract as well as payment and performance bonds in the property records of Calcasieu Parish, Louisiana. Golden Nugget purchased the ownership interest in the Project in 2013. On December 1, 2014, Yates and Golden Nugget signed a certificate of substantial completion, which meant that the Project was fit for occupancy. The Project has been in use ever since. According to Golden Nugget, "Golden Nugget has paid nearly all amounts owed under the Contract, but [it] is withholding approximately $18.7 million to

---

[1] A "privilege" can also be called a "lien" or a "right to assert a lien." *See* Michael H. Rubin, *Ruminations on the Louisiana Private Works Act*, 58 La. L. Rev. 569, 574 n.21 (1998) (explaining that "lien" is technically the common law term for "privilege"). However, litigants and courts often refer to filing liens against property—terminology which suggests that a claimant's lien is a document. *See, e.g.*, *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 536 (5th Cir. 2004) ("[T]he subcontractor filed claims and privileges or liens against the owner's property. . . ."). We refer to the privilege granted by § 9:4801 of the LPWA as Yates's "lien," and its statement of privilege as a "lien statement"—the mechanism by which a lien is recorded. *See* La. Stat. Ann. § 9:4822; Rubin, *supra*, at 579 ("The Private Works Act provides the mechanism by which both liens are placed on the public records and by which they are enforced.").

No. 16-30496

protect itself against estimated damages caused by Yates'[s] contractual and other breaches."

On November 25, 2015, Golden Nugget filed a complaint in federal district court seeking damages and declaratory relief for breach of contract, breach of warranty, and negligence in connection with the Project. Yates filed a counterclaim on December 21, 2015, alleging that Golden Nugget is wrongfully refusing and delaying payment on the Project. In its counterclaim, Yates indicated that it would be "filing a statement of lien and privilege pursuant to [Louisiana Statutes §] 9:4801 et. seq. to secure payment for the price of its work" and that it sought "recognition of that lien and privilege" by the district court. Two days later, Yates filed a lien statement in the mortgage records for Calcasieu Parish. Golden Nugget filed a motion to partially dismiss the counterclaim on January 15, 2016. Specifically, Golden Nugget argued that Yates had not filed the statement in time to preserve its lien under the LPWA. Under the district court's interpretation of § 9:4822, the statement was untimely; therefore, the court "dismiss[ed] with prejudice Yates' claim for a statutory lien." At Golden Nugget's request, Yates had the lien statement removed from the parish property records to prevent the lien from acting as a cloud on Golden Nugget's title to the property.[2] Yates filed a notice of appeal on April 29, 2016.

---

[2] On August 18, 2016, Golden Nugget filed a motion to dismiss for lack of jurisdiction in this Court asserting that there is no longer a case or controversy between the parties due to Yates's voluntary cancellation of the lien from the property records. At oral argument, Golden Nugget conceded that Yates only had the record removed at Golden Nugget's request. The parties agree that the cancellation benefitted both of them; it prevented the possibility that either party might incur damages as a result of this dispute. The live controversy in this case is whether Yates still has a statutory right to assert its lien. Golden Nugget's motion to dismiss is therefore denied.

## II. DISCUSSION

The district court had jurisdiction under 28 U.S.C. § 1332. This Court has appellate jurisdiction over the district court's decision pursuant to 28 U.S.C. § 1291. We review a district court's grant of a motion to dismiss de novo. *Whitley v. BP, PLC*, 838 F.3d 523, 526 (5th Cir. 2016).

The question in this case is one of statutory interpretation: whether the phrase "substantial completion of the work" in § 9:4822(B) refers to an event or a document. The LPWA "protects contractors, laborers, suppliers of material and others who contribute to construction projects by granting them a privilege on the immovable to secure the price of their work." *In re Whitaker Constr. Co.*, 439 F.3d 212, 216 (5th Cir. 2006). "The rights created by the [LPWA] extinguish after a period of time, the length of which is defined by statute and depends on a variety of factors." *Id.* A contractor must assert its lien by filing a statement of claim or privilege—a lien statement—within a certain time frame. *See* La. Stat. Ann. § 9:4822. The time frame varies based on whether a notice of contract was filed by the parties and based on the type of lien claimant. *See id.* Because a notice of contract was filed in this case and because Yates is a general contractor, the parties agree that § 9:4822(B) governs. That provision states:

> A general contractor to whom a privilege is granted by R.S. 9:4801 of this Part, and whose privilege has been preserved in the manner provided by R.S. 9:4811, shall file a statement of his privilege *within sixty days after the filing of the notice of termination or substantial completion of the work*.

§ 9:4822(B) (emphasis added).

The parties dispute the meaning of "within sixty days after the filing of the notice of termination or substantial completion of the work." The basic arguments are straightforward. Yates contends that this phrase requires an owner—here, Golden Nugget—to take affirmative action by filing either a

No. 16-30496

notice of termination or a notice of substantial completion of the work in the local property records. Because Golden Nugget never filed such a document, Yates argues, "the time period for Yates to file its [lien statement] never started to run." Consequently, the lien statement Yates filed on December 23, 2015, was timely.

Golden Nugget, by contrast, asserts that "substantial completion of the work" under subsection (B) refers to an *event*—"a state of a construction project and not . . . a document to be recorded." Under Golden Nugget's interpretation, § 9:4822(B) "sets forth . . . two alternative triggers applicable to general contractors": when the owner files a notice of termination or when the work is substantially completed. Golden Nugget argues that because work on the project was substantially completed when the Project became occupied in December 2014, the sixty-day period during which Yates could have filed the lien statement has long since expired.

Golden Nugget rests its argument on § 9:4822(H), which defines substantial completion as an event. That subsection specifies:

> A work is substantially completed when:
>
> (1) The last work is performed on, or materials are delivered to the site of the immovable or to that portion or area with respect to which a notice of partial termination is filed; or
>
> (2) The owner accepts the improvement, possesses or occupies the immovable, or that portion or area of the immovable with respect to which a notice of partial termination is filed, although minor or inconsequential matters remain to be finished or minor defects or errors in the work are to be remedied.

§ 9:4822(H). Yates acknowledges that this subsection refers to an event but argues that it applies to several other provisions, notably § 9:4822(C) (sixty-day time period begins for § 9:4802 claimants when a notice of contract has not been filed); § 9:4822(D)(1) (sixty-day period begins for claimants under

5

No. 16-30496

§ 9:4801(5)); § 9:4822(D)(2) (seventy-day period begins for sellers of movables sold for residential purposes); and § 9:4822(E) (laying out certification requirements for a notice of termination).

Yates, on the other hand, contends that subsection (F), rather than (H), is determinative. Section 9:4822(F) states that "[a] notice of termination or substantial completion of the work may be filed from time to time with respect to a specified portion or area of work." It further states that "the time for preserving privileges or claims as specified in Subsection A or C of this Section shall commence with the *filing of the notice of termination or substantial completion*." § 9:4822(F) (emphasis added). As Yates points out, this subsection clearly refers to a notice of substantial completion as a document ("notice of . . . substantial completion of the work may be filed"), and the language is nearly identical to the language at issue in subsection (B). In addition, the phrase "or substantial completion" was added to subsections (B) and (F) in the same amendment to the LPWA, indicating that legislators intended the phrase to have the same meaning in both subsections. *See* Acts 1988, No. 685, § 1, 1988 La. Sess. Law Serv. 685, 685 (West). Golden Nugget counters that because subsection (F) only applies to non-general contractors, it has "no bearing on what constitutes substantial completion under 4822(B) for general contractor claimants such as Yates."

The text of the statute by itself is ambiguous. "To resolve textual ambiguity, we consult the interpretations given to the statute by Louisiana courts." *In re Whitaker*, 439 F.3d at 224. Louisiana courts have not squarely addressed the question at hand—whether § 9:4822(B), which applies to *general* contractors, refers to "substantial completion" as a document or an event.[3]

---

[3] The Louisiana cases that do address § 9:4822(B) are minimally useful; they provide inconsistent answers and none have explicitly considered the question presented by this case. *Compare Triangle Pac. Corp. v. Nat'l Bldg. & Contracting Co.*, 652 So. 2d 552, 556 (La. Ct.

However, several cases involving *subcontractors* lend support to Yates's position that § 9:4822(B) requires an owner to file a notice to trigger the sixty-day period. In *Whitaker*, the Fifth Circuit considered a subcontractor's claims concerning two separate construction projects, both of which involved recorded contracts. *Id.* at 214. On one project, a certificate of substantial completion was filed on September 17, 2001. *Id.* This Court found that the statutory period began on that date and had already expired—although the main issue with respect to the first project was whether the claim had been preserved under § 9:4813(E). *Id.* at 217, 220–21. The issue with respect to the second project, however, was whether, "when a notice of a contract has been filed but a notice of termination has not," the statutory period for enforcing a lien ever began. *Id.* at 221. For the second project, "no official filing was made regarding completion, though other events occurred that suggest the project was completed"—including the issuance of a certificate of occupancy. *Id.* at 214. The Court ultimately determined that "when a notice of a contract has been filed but notice of termination is not, the time period for making claims is not triggered." *Id.* at 226.

In making its decision in *Whitaker*, this Court relied on *Bernard Lumber Co. v. Lake Forest Construction Co.*, 572 So. 2d 178 (La. Ct. App. 1990). In *Bernard Lumber*, the Louisiana Court of Appeal stated that "the notice of contract/notice of termination procedure provides an owner with a method for

---

App. 1995) (determining whether a contractor had timely sued to enforce his lien and using the date a notice of substantial completion was filed as the trigger date), *with Paul Hyde, Inc. v. Richard*, 854 So. 2d 1000, 1002 (La. Ct. App. 2003) (determining whether a lien was valid when it was filed *before* notice of termination or substantial completion, and using subsection (H) to define "substantial completion of the work"), *and In re Tuscany Reserve, LLC*, No. 09-11027, 2011 WL 831596 (Bankr. M.D. La. Mar. 3, 2011) (unpublished) (using the event of substantial completion as the trigger date, although a certificate of substantial completion was later filed).

cutting off the valid assertion of any potential claims or privileges." *Id.* at 181. According to the court, an owner who neglects to take affirmative action "should be made to bear the consequences of his failure to file a notice of termination, not the claimant." *Id.* Therefore, the court determined, § 9:4822(A) "places the onus on the owner to file a notice of termination when a notice of contract has been filed." *Id.*

Similarly, in *Byron Montz, Inc. v. Conco Construction, Inc.*, 824 So. 2d 498 (La. Ct. App. 2002), a Louisiana court found that a subcontractor did not preserve its lien under the LPWA because it did not file its statement within the sixty-day period prescribed by § 9:4822(C). *Id.* at 499. In that case, both a notice of contract and a certificate of substantial completion were filed on March 14, 2000. *Id.* at 500. These filings were distinguishable from the *event* of substantial completion, which the court found to have occurred on January 8, 2000. *Id.* In stating that "[t]he time period for [the subcontractor] to timely file its statement of claim was thus sixty days from [the owner's] filing of its notice of termination of the work on March 14, 2000," *id.* at 503, the court appeared to conflate a notice of termination—which is one trigger for the statutory period in § 9:4822(C)—and a notice of substantial completion, the document the owner actually filed in this case, *see* § 9:4822(C); *Clark Constr. Co. v. Warren*, 760 So. 2d 677, 681 (La. Ct. App. 2000) (noting that the LPWA "provides for filing claims or privileges within thirty or sixty days after the 'filing of a notice of termination of the work'" and that "[h]ere, the notice of substantial completion was . . . filed on August 17 [and] [t]hus, timeliness of the liens should be determined by reference to the filing date of August 17").

We find these cases persuasive. As an initial matter, they clarify that notices of substantial completion are regularly filed in connection with construction projects, undermining Golden Nugget's suggestion that § 9:4822(B) could only refer to an event. Courts also appear to treat these

notices as functionally equivalent to notices of termination. *See Byron Montz*, 824 So. 2d at 503; *Clark Constr.*, 760 So. 3d at 681. It is therefore logical to presume that § 9:4822(B) refers to two different notices an owner can file that fulfill the same purpose of triggering the statutory lien period. Additionally, given that the legislature added the phrase "or substantial completion" to § 9:4822(B) at the same time it added the identical phrase—clearly referencing a document—to § 9:4822(F), we can also presume that "substantial completion" has the same meaning in both subsections.

Next, these cases recognize that a lien claimant's rights under § 9:4822 can be altered depending on whether the parties' contract has been recorded. The LPWA provides different requirements for filing a lien statement based on whether a notice of contract has been filed. *See* § 9:4822. When a notice of contract has been filed, an owner must file a document to notify contractors that the time period to file a lien statement has begun. § 9:4822(A); *Bernard Lumber*, 572 So. 2d at 181–82 (referring to the "notice of contract/notice of termination procedure," which "clearly places the onus on the owner to file a notice of termination when a notice of contract has been filed"). By contrast, "substantial completion of the work" is an event when the contract is unrecorded. § 9:4822(C); *see also Byron Montz*, 824 So. 2d at 503; § 9:4822(a) editors' note to 1981 amendment (explaining that when "no notice of contract is filed an owner may still file a notice of termination" but if no notice is filed, the filing period expires "60 days after the work is substantially completed or abandoned"). Because Yates and Golden Nugget recorded their contract, therefore preserving Yates's privilege under § 9:4811 as required by § 9:4822(B), Golden Nugget was required to file a document to begin the statutory lien period.

Golden Nugget contends that "[a]s an equitable or policy matter, it would make more sense to require that a subcontractor receive more actual or

constructive notice that a project has concluded before its lien clock starts" than a general contractor because "a general contractor is in direct privity with an owner and can be expected to know when a project has reached substantial completion." But as Yates points out, when a contract has been recorded, § 9:4822(A) affords subcontractors *thirty* days to file a lien statement when a notice of termination is filed. By contrast, § 9:4822(B) gives general contractors *sixty* days under the same or at least similar circumstances. Golden Nugget acknowledges that under its interpretation, while Yates's lien rights would be foreclosed, a subcontractor in the same position as Yates would still be able to file a lien statement because no notice of termination was ever filed and the statutory period never began to run. *See* § 9:4822(A). Golden Nugget provides no legal support for its argument that a general contractor should have a shorter period of time to file a lien statement or that the time period for a general contractor to file a lien statement begins to run at a different point than for a subcontractor.

Ultimately, this statute is predominantly about filing requirements. The LPWA places the burden on an owner to take affirmative action to cut off potential claims when a contract has been recorded, whether it is a general contractor or a subcontractor. The weight of Louisiana case law, in combination with the nearly identical language in subsections (B) and (F), suggest that the sixty-day period in § 9:4822(B) begins to run when either a notice of termination or a notice of substantial completion is filed. Because here the contract was recorded but no notice of termination or completion was ever filed, Yates has a valid lien and a right to file a lien statement.

## III. CONCLUSION

Accordingly, the district court's decision granting the motion to dismiss is REVERSED and REMANDED.