REVISED October 3, 2016

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

September 26, 2016

Lyle W. Cayce
Clerk

———————

No. 15-20282

———————

RALPH WHITLEY, Individually and on behalf of others similarly situated;
FRANKIE RAMIREZ; DAVID M. HUMPHRIES; CHARIS MOULE;
EDWARD F. MINEMAN; SYED ARSHADULLAH; JERRY T. MCGUIRE;
MAUREEN S. RIELY; THOMAS P. SOESMAN,

                  Plaintiffs - Appellees

v.

BP, P.L.C.; ANTHONY HAYWARD; THE SAVINGS PLAN INVESTMENT
OVERSIGHT COMMITTEE; RICHARD J. DORAZIL; COREY CORRENTI;
MARVIN DAMSMA; JAMES DUPREE; PATRICK GOWER; JEANNE M.
JOHNS; PATRICIA H. MILLER; STEPHEN J. RINEY; BRIAN D. SMITH;
LORD JOHN BROWNE; STEPHANIE C. MOORE; BP CORPORATION
NORTH AMERICA, INCORPORATED; BP AMERICA, INCORPORATED;
LAMAR MCKAY; GREGORY T. WILLIAMSON; NEIL SHAW; THOMAS L.
TAYLOR; BP CORPORATION NORTH AMERICA, INCORPORATED'S
BOARD OF DIRECTORS; ROBERT A. MALONE,

                  Defendants - Appellants

———————

Appeal from the United States District Court
for the Southern District of Texas

———————

Before WIENER, CLEMENT, and COSTA, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

In this stock-drop suit, the question on appeal is whether the district court erred in holding that the plaintiff stockholders' amended complaint stated a plausible claim under the pleading standards of *Fifth Third Bancorp v. Dudenhoeffer,* 134 S. Ct. 2459 (2014). Because we conclude that it did, we reverse and remand.

## I.

BP, p.l.c. ("BP") is a multinational oil and gas company headquartered in London, England. BP offered its employees a choice of investment and savings plans (the "Plans") regulated by ERISA, 29 U.S.C. §§ 1001-1461. The Plans included the BP Stock Fund—an employee stock ownership plan ("ESOP") comprised primarily of BP stock—as an investment option.

On April 20, 2010, the BP-leased *Deepwater Horizon* offshore drilling rig exploded, causing a massive oil spill in the Gulf of Mexico and a subsequent decline in BP's stock price. The BP Stock Fund lost significant value, and the affected investors filed suit on June 24, 2010, alleging that the plan fiduciaries: (1) breached their duties of prudence and loyalty by allowing the Plans to acquire and hold overvalued BP stock; (2) breached their duty to provide adequate investment information to plan participants; and (3) breached their duty to monitor those responsible for managing the BP Stock Fund.

The district court determined that the fiduciaries' investments in company stock were entitled to a "presumption of prudence" under *Kirschbaum v. Reliant Energy, Inc.,* 526 F.3d 243, 255 (5th Cir. 2008) (applying *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995), *abrogated by Fifth Third*, 134 S. Ct. 2459). The district court held that the plaintiffs (hereafter "stockholders") had failed to overcome the *Moench* presumption and dismissed their claims under Federal Rule of Civil Procedure 12(b)(6). The stockholders appealed, and while their appeal was pending in this court, the Supreme Court issued *Fifth Third*, holding that there was no such "presumption of prudence" under ERISA. 134

S. Ct. at 2467. Instead, the Court held that "[t]o state a claim for breach of the duty of prudence on the basis of inside information, a plaintiff must plausibly allege an alternative action that the defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it." *Id.* at 2472. This court then vacated the district court's judgment and remanded for reconsideration in light of *Fifth Third*. *Whitley v. BP, P.L.C.*, 575 F. App'x 341, 343 (5th Cir. 2014).

On remand, the stockholders moved to file an amended complaint alleging, as per *Fifth Third*, that the defendant fiduciaries possessed unfavorable inside information about BP and that they could have taken various alternative actions that would not have done more harm than good to the BP Stock Fund. The district court held that: (1) the stockholders had plausibly alleged that the defendants had inside information; and (2) the stockholders had plausibly alleged two alternative actions that the defendants could have taken that met the *Fifth Third* standard: freezing, limiting, or restricting company stock purchases; and disclosing unfavorable information to the public. The district court granted the motion to amend with respect to pleading these alternative actions. It then certified the defendants' motion for interlocutory appeal.

## II.

Under 28 U.S.C. § 1292(b), this court has "appellate jurisdiction over the order certified to the court of appeals," and "review is not limited to the controlling question of law formulated by the district court in its certification order." *Hines v. Alldredge*, 783 F.3d 197, 200 (5th Cir. 2015). This court reviews "de novo a district court's grant or denial of a Rule 12(b)(6) motion to dismiss." *Id.* at 200–01 (quoting *True v. Robles,* 571 F.3d 412, 417 (5th Cir. 2009)). Here, because the district court's grant of leave to amend was the functional

equivalent of a denial of a Rule 12(b)(6) motion to dismiss, and was based on a question of law, this court reviews the district court's order de novo.

### III.

ERISA, 29 U.S.C. §§ 1001-1461, protects participants in voluntarily established, private sector retirement plans. It does this "by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans." 29 U.S.C. § 1001(b). It "provides that an employer who sponsors an employee plan may also serve as a fiduciary of that plan," and it "imposes on the employer-fiduciary and on those who manage the plan strict statutory duties, including loyalty, prudence, and diversification." *Kirschbaum*, 526 F.3d at 248.

Here, the BP Stock Fund was an ESOP. "The term 'employee stock ownership plan' means an individual account plan . . . which is designed to invest primarily in qualifying employer securities . . . ." 29 U.S.C. § 1107(d)(6)(A). When the share price of an employer's stock decreases, the value of an employee-held ESOP account decreases as well. When the share price of an employer's stock decreases significantly, the affected employees often sue to recover their losses on their investments in employer stock. Such actions are commonly known as "stock-drop" suits.

Courts have recognized a tension between a fiduciary's duty to prudently manage investments under ERISA and Congress's allowance of funds composed primarily of employer stock. In *Moench*, the Third Circuit framed the question as follows: "To what extent may fiduciaries of [ESOPs] be held liable under [ERISA] for investing solely in employer common stock, when both Congress and the terms of the ESOP provide that the primary purpose of the plan is to invest in the employer's securities[?]" 62 F.3d at 556. There, the plaintiffs sued after their employer, a bank, collapsed, wiping out their ESOP investments. After a lengthy discussion of the history and purpose of ERISA

and ESOP funds, the Third Circuit ultimately held that "an ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision." *Id.* at 571. This presumption was later adopted by several other circuits, including this one in *Kirschbaum*, 526 F.3d at 255.

The *Moench* presumption was rejected by the Supreme Court in *Fifth Third.* 134 S. Ct. 2459. There, the defendants included a large financial services firm and the plaintiffs were ESOP participants. The firm's stock price plummeted seventy-four percent during the great recession. The plaintiffs sued, alleging that "the fiduciaries knew or should have known that Fifth Third's stock was overvalued and excessively risky" based on both public information and nonpublic, i.e., inside, information. *Id.* at 2464. The district court held that the defendants were entitled to a "presumption that their decision to remain invested in Fifth Third stock was reasonable," *Dudenhoeffer v. Fifth Third Bancorp,* 757 F. Supp. 2d 753, 758 (S.D. Ohio 2010), and cited *Moench*. The district court held that the plaintiffs had failed to allege sufficient facts to overcome the presumption and dismissed the complaint under Rule 12(b)(6). The Sixth Circuit reversed. *Dudenhoefer v. Fifth Third Bancorp*, 692 F.3d 410, 424 (6th Cir. 2012). The Sixth Circuit did not reject the application of the presumption; rather, it held that the presumption concerns questions of fact that do not apply at the pleading stage. *Id.* at 418-19.

The Supreme Court noted that "[i]n applying a 'presumption of prudence' that favors ESOP fiduciaries' purchasing or holding of employer stock, the lower courts have sought to reconcile congressional directives that are in some tension with each other." 134 S. Ct. at 2465. "On the one hand, ERISA itself subjects pension plan fiduciaries to a duty of prudence," while "[o]n the other hand, Congress recognizes that ESOPs are 'designed to invest primarily in' the stock of the participants' employer, § 1107(d)(6)(A), meaning that they

are *not* prudently diversified." *Id.* After reviewing the "pertinent provisions of ERISA," the Court held that "the law does not create a special presumption favoring ESOP fiduciaries" and that "the same standard of prudence applies to all ERISA fiduciaries, including ESOP fiduciaries, except that an ESOP fiduciary is under no duty to diversify the ESOP's holdings." *Id.* at 2467.

The Court nonetheless recognized the plaintiffs' "legitimate" concern "that subjecting ESOP fiduciaries to a duty of prudence without the protection of a special presumption will lead to conflicts with the legal prohibition on insider trading" because "ESOP fiduciaries often are company insiders and because suits against insider fiduciaries frequently allege . . . that the fiduciaries were imprudent in failing to act on inside information they had about the value of the employer's stock." *Id.* at 2469. The Court disagreed that the presumption of prudence applied by the lower courts was "an appropriate way to weed out meritless lawsuits" and stated that such a task could "be better accomplished through careful, context-sensitive scrutiny of a complaint's allegations." *Id.* at 2470.

Turning to pleading standards, the Court stated that "where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances." *Id.* at 2471. The Court then stated:

> To state a claim for breach of the duty of prudence on the basis of inside information, a plaintiff must plausibly allege an alternative action that the defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it.

6

*Id.* at 2472. The Court vacated and remanded, "leav[ing] it to the courts below to apply the foregoing to the complaint in this case in the first instance." *Id.* at 2473.

The Ninth Circuit soon took on the challenge of interpreting the Supreme Court's *Fifth Third* pleading standards in *Harris v. Amgen, Inc.*, 788 F.3d 916 (9th Cir. 2015). *Harris*—like this case—was an employee stock-drop action that was filed before *Fifth Third*. In *Harris*, the plaintiffs alleged that Amgen, a pharmaceutical company, concealed unfavorable information about a drug, and that when the unfavorable information came to light, Amgen's share price declined significantly. The plaintiffs claimed "that fiduciaries of Amgen's stock-ownership plans knew or should have known that the stock was overvalued based on inside information, and should have either removed the Amgen stock as an investment option or revealed to the general public" the unfavorable inside information. *Id.* at 924 (Kozinski, J., dissenting from denial of rehearing en banc). The Ninth Circuit decided that the allegations in the plaintiffs' complaint—despite being written before *Fifth Third*—were sufficient because it was "plausible" that the "defendants could remove the Fund from the list of investment options without causing undue harm to plan participants." *Id.* at 938. The court further held that the Supreme Court had "articulated certain standards for ERISA liability in *Fifth Third*" but that the Ninth Circuit had "already assumed those standards" in an earlier opinion. *Id.* at 940.

The Supreme Court reversed. *Amgen Inc. v. Harris*, 136 S. Ct. 758 (2016). The Court clarified that the *complaint itself* must plausibly allege "that a prudent fiduciary in the same position 'could not have concluded' that the alternative action 'would do more harm than good.'" *Id.* at 760 (quoting *Fifth Third*, 134 S. Ct. at 2463). The Court clarified that a court cannot simply presume that the plaintiff's proposed alternatives would satisfy the *Fifth Third* standards; rather, "the facts and allegations supporting that proposition

should appear in the stockholders' complaint." *Id.* Noting that the plaintiffs were the "masters of their complaint," the Court left it to the district court to determine whether the *Amgen* plaintiffs could amend their complaint to satisfy the standards of *Fifth Third. Id.*

In light of these decisions, the district court here erred when it altered the language of *Fifth Third* to reach its holding. In *Fifth Third*, the Supreme Court stated that the plaintiff's proposed alternative must be one that "a prudent fiduciary in the same circumstances would not have viewed as *more likely to harm the fund than to help it.*" 134 S. Ct. at 2472 (emphasis added). But here the district court stated that it could not determine, "on the basis of the pleadings alone, that *no* prudent fiduciary would have concluded that [the alternatives] would do *more good than harm*" (second emphasis added). These statements are not equivalent. Under the Supreme Court's formulation, the plaintiff bears the significant burden of proposing an alternative course of action so clearly beneficial that a prudent fiduciary *could not conclude* that it would be more likely to harm the fund than to help it.

Here, the stockholders have failed to do so. Indeed, in certifying this case for interlocutory appeal the district court recognized that if defendants have correctly read *Dudenhoeffer* to require "plaintiffs to plausibly allege that *no* prudent fiduciary could have concluded that the proposed alternative action would do more harm than good"—and *Amgen* has since confirmed that is the standard—then the plaintiff's claim should be dismissed. In their amended complaint, the stockholders state that their proposed alternatives "(a) could have been done without violating the securities laws or any other laws; (b) should have been done to fulfill Defendants' fiduciary obligations under ERISA; and (c) would not have been more likely to harm the BP Stock Fund than to help it." Aside from these conclusory statements, the stockholders do not specifically allege, for each proposed alternative, that a *prudent fiduciary*

8

could not have concluded that the alternative would do more harm than good, nor do they offer facts that would support such an allegation. This runs counter to the Supreme Court's directive that "the facts and allegations supporting" an alternative action that could satisfy *Fifth Third*'s standards "should appear in the stockholders' complaint." 136 S. Ct. at 760. *See also Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016) (affirming a dismissal under 12(b)(6) because the plaintiffs' complaint did not "plausibly plead facts and allegations showing that a prudent fiduciary during the class period 'would not have viewed [disclosure of material nonpublic information regarding Lehman or ceasing to buy Lehman stock] as more likely to harm the fund than to help it'" (quoting *Amgen*, 136 S. Ct. at 759) (alteration in original)).

The amended complaint states that BP's stock was overvalued prior to the *Deepwater Horizon* explosion due to "numerous undisclosed safety breaches" known only to insiders. In other words, the stockholders theorize that BP stock was overpriced because BP had a greater risk exposure to potential accidents than was known to the market. Based on this fact alone, it does not seem reasonable to say that a prudent fiduciary at that time could not have concluded that (1) disclosure of such information to the public or (2) freezing trades of BP stock—both of which would likely lower the stock price—would do more harm than good. In fact, it seems that a prudent fiduciary could very easily conclude that such actions *would* do more harm than good.

Accordingly, we find that the stockholders' amended complaint is insufficient, and the district court erred in granting the stockholders' motion to amend.

## IV.

For the foregoing reasons, the judgment of the district court is REVERSED, and the case is REMANDED for further proceedings.