# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 20, 2022

Lyle W. Cayce
Clerk

No. 21-30331

Louisiana Independent Pharmacies Association,

*Plaintiff—Appellee*,

*versus*

Express Scripts, Incorporated,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:20-CV-647

Before King, Jones, and Duncan, *Circuit Judges*.
Edith H. Jones, *Circuit Judge*:

Nominally, the question in this appeal is whether Medicare Part D preempts a Louisiana statute requiring that prescription drug plan sponsors reimburse pharmacists for a ten-cent fee imposed on pharmacists for every prescription filled in the state. We do not address the merits of that controversy, however, because we conclude that there is no basis for subject matter jurisdiction. The Plaintiff's claims do not satisfy the well-pleaded complaint rule, and the Plaintiff-organization did not show that any single member's claim would satisfy the amount in controversy requirement for

No. 21-30331

diversity jurisdiction. We therefore VACATE the district court's judgment and REMAND with instructions to dismiss.

**I.**

To understand this dispute, a brief overview of the competing federal and state statutory regimes at issue is helpful. First, Medicare Part D provides prescription drug benefits to those who are eligible for benefits under Medicare Part A or enrolled under Part B. 42 U.S.C. § 1395w-101(a)(1), (a)(3)(A). Congress structured Part D as a public-private partnership under which private insurance companies, known as plan sponsors, administer Part D's prescription drug benefits under a Medicare Prescription Drug Plan (PDP) or Medicare Advantage (Part C) plan. *See Cares Cmty. Health v. United States Dep't of Health & Human Servs.*, 944 F.3d 950, 954 (D.C. Cir. 2019) (citing *United States ex rel. Spay v. CVS Caremark Corp.*, 875 F.3d 746, 749 (3d Cir. 2017)); 42 C.F.R. § 423.4. Typically, Part D plans are administered by pharmacy benefit managers, entities that verify benefits for plan sponsors and manage financial transactions among pharmacies, plan sponsors, and patients.

Individuals enrolled in a Part D plan receive prescription drugs at the "standard prescription drug coverage" rate in the usual course and at the "negotiated prices" rate when benefits are not payable, such as when the individual has not yet met her deductible. *See* 42 U.S.C. § 1395w-102(a)(1), (d)(1). Neither rate is defined to include taxes or state-imposed fees. *Id.* To promote competition, and therefore lower prices, Congress authorized plan sponsors to freely negotiate the terms of their relationships with pharmacies, including the terms of reimbursements, without governmental interference. *Id.* at § 1395w-111(i). Moreover, Congress specified that "[t]he standards established under this part shall supersede any State law or regulation . . . with respect to [Part D] plans." *Id.* at § 1395w-26(b)(3)

No. 21-30331

(Medicare Part C preemption provision); *Id.* at § 1395w-112(g) (incorporating same provision into Part D).

Next, Louisiana has enacted a provider fee for prescriptions to help fund its share of the State's Medicaid program. A statute authorizes its Department of Health to set the fee at up to ten cents for every outpatient prescription a pharmacist fills. LA. REV. STAT. ANN. § 46:2625(A)(1)(c)-(e). Department of Health regulations set the provider fee at the maximum ten cents. LA. ADMIN. CODE tit. 48, pt. 1 § 4001(D). The state also requires pharmaceutical benefit plan sponsors to reimburse the pharmacists for the provider fee. LA. REV. STAT. ANN. § 22:1860.1(A). Moreover, the statute specifies that the provider fee "shall be considered an allowable cost for purposes of insurance or other third party reimbursements and shall be included in the establishment of reimbursement rates." *Id.* at § 46:2625(A)(2)(a).

To enforce the reimbursement requirement, Louisiana vests its Department of Insurance with authority to sanction plan sponsors that do not comply. *Id.* at § 22:1860.1(B). State law also mandates that "[e]very contract between a pharmacy or pharmacist or his agent and a health insurance issuer or its agent shall include provisions requiring the health insurance issuer or its agent to reimburse the pharmacy or pharmacist or his agent" for the provider fee, "provided that the pharmacy or pharmacist or his agent makes a claim for reimbursement of the fee." *Id* at § 46:2625(A)(2)(b). Moreover, "[a]ny contract that does not include such provisions shall nonetheless be interpreted and enforced" as if it did include a reimbursement provision. *Id.*

Shortly after Section 22:1860.1 was enacted, the Department of Insurance issued an advisory letter taking the position that, because of Medicare Part D's preemption provision, the Department could not require compliance "with either the levying of the [provider fee] or the provision of

3

the same statute requiring contractual reimbursement." The Department of Health, however, advised pharmacies that they are nevertheless required to pay the provider fee on all prescriptions, including Part D prescriptions.

Express Scripts, Inc., the appellant here, is a large pharmacy benefits manager. Following the interpretation by the Department of Insurance, Express Scripts announced that it would not reimburse pharmacists for the provider fee on prescriptions covered by Part D plans. The Louisiana Independent Pharmacies Association ("LIPA") sued Express Scripts on behalf of its members, seeking a declaratory judgment on whether LA. REV. STAT. ANN. §§ 22:1860.1 and 46:2625 are preempted by Medicare Part D.[1] Express Scripts moved to dismiss LIPA's request for declaratory judgment regarding the reimbursement provision for failure to state a claim, *see* FED. R. CIV. P. 12(b)(6), on the basis that Medicare Part D preempts the reimbursement provision for prescriptions covered by Part D plans.[2]

---

[1] This is not LIPA's first attempt to secure declaratory relief on this question. LIPA previously sued four other pharmacy benefits managers in state court seeking identical relief. *See La. Indep. Pharmacies Ass'n v. Catamaran Corp.*, 2019 WL 1084205 (La. App. Mar. 7, 2019). The state court dismissed that lawsuit for lack of associational standing. *Id.* at *1. Before that, LIPA sued the Louisiana Department of Insurance and Department of Health seeking a declaratory judgment to resolve a perceived inconsistency between the Department of Insurance's position that Medicare preempts the reimbursement requirement and the Department of Health's position that pharmacists are nevertheless required to pay the provider fee on Medicare Part D prescriptions. In response, the Department of Insurance issued a revised advisory letter to clarify its position. The state court then entered a consent judgment, holding that "there is not a conflict" between the two Departments' positions.

[2] Express Scripts also moved to dismiss the request for declaratory judgment on the provider fee for lack of an Art. III controversy. FED. R. CIV. P. 12(b)(1). Because Express Scripts has nothing to do with the requirement that pharmacists pay the provider fee, plaintiffs could not obtain relief from that law against Express Scripts. The district court agreed with Express Scripts but, perhaps out of mere oversight, erroneously failed to dismiss those claims.

No. 21-30331

The district court concluded, however, that Express Scripts failed "to meet its burden of showing preemption or any other basis for dismissal." Express Scripts moved to certify the order denying its motion to dismiss for interlocutory appeal under 28 U.S.C. § 1292(b). The district court granted certification, and this court agreed to take the appeal.

## II.

This court reviews a district court order denying a motion to dismiss de novo. *Whitley v. BP, P.L.C.*, 838 F.3d 523, 526 (5th Cir. 2016). Likewise, "[l]egal questions concerning federal jurisdiction are reviewed de novo." *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011).

## III.

The parties agreed in their opening briefs that the district court had federal question jurisdiction under 28 U.S.C. § 1331. Notwithstanding their representation, this court has an independent obligation to assess the basis for subject matter jurisdiction before wielding the judicial power of the United States. *See, e.g.*, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S. Ct. 1563, 1570 (1999); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 118 S. Ct. 1003, 1016 (1998). Doubtful about the existence of federal question jurisdiction, we asked for and received supplemental briefing addressing the issue.

In its supplemental brief, LIPA maintained, first, that the federal court has diversity jurisdiction, and in the alternative, that it has federal question jurisdiction. To allege diversity jurisdiction, which it had not done before, LIPA moved to amend its complaint under 28 U.S.C. § 1653 and to add facts supporting the amount in controversy requirement. For its part, Express Scripts cited some case law and merely opined that it is a close question whether federal question jurisdiction exists. As for diversity jurisdiction, Express Scripts argued that because LIPA's original complaint lacked

5

No. 21-30331

allegations necessary to support the amount in controversy requirement, this court should not allow such an amendment at this late stage. We conclude that the court lacks both federal question and diversity jurisdiction.

## A. Federal Question Jurisdiction

Federal courts have subject matter jurisdiction over cases "arising under" federal law. 28 U.S.C. § 1331. Generally, a case arises under federal law only where a federal question is presented on the face of a well-pleaded complaint, that is, a complaint that asserts the plaintiff's right to recovery based on federal law. *See Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 10, 103 S. Ct. 2841, 2846 (1983) (quoting *Taylor v. Anderson*, 234 U.S. 74, 75-76, 34 S. Ct. 724, 724 (1914)). The well-pleaded complaint rule precludes a plaintiff from predicating federal jurisdiction on an anticipated federal defense to his claim. *Id.* Federal preemption "is ordinarily a federal defense to the plaintiff's suit" and, as a result, does not support federal question jurisdiction. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S. Ct. 1542, 1546 (1987).

To apply the well-pleaded complaint rule in a case like this, where the plaintiff brought suit under the Declaratory Judgment Act, 28 U.S.C. § 2201, the court must ask whether "if the declaratory judgment defendant brought a coercive action to enforce its rights [against the declaratory judgment plaintiff], that suit would necessarily present a federal question." *Franchise Tax Bd.*, 463 U.S. at 19, 103 S. Ct. at 2851. Critically, "[a] plaintiff cannot evade the well-pleaded complaint rule by using the declaratory judgment remedy to recast what are in essence merely anticipated or potential federal defenses as affirmative claims for relief under federal law." *New Orleans & Gulf Coast Ry. v. Barrois*, 533 F.3d 321, 329 (5th Cir. 2008) (citing *TTEA v. Ysleta del Sur Pueblo*, 181 F.3d 676, 681 (5th Cir. 1999)).

6

No. 21-30331

Here, LIPA seeks a declaration that Express Scripts' state law and related contractual obligation to reimburse LIPA's member pharmacies for the provider fee is not preempted by federal law. Applying the well-pleaded complaint rule requires the court to imagine a hypothetical coercive lawsuit brought by Express Scripts against LIPA's member pharmacies. But none is conceivable. The only possible coercive (i.e., non-declaratory) action between these parties might be a breach of contract claim by LIPA's member pharmacies against Express Scripts for failing to reimburse them for the provider fee. Because Express Scripts has no possible ground for a coercive lawsuit, no federal question arises for purposes of jurisdiction in LIPA's declaratory judgment case.

LIPA makes the alternative—and entirely self-defeating—argument that this court has federal question jurisdiction under the complete preemption doctrine. "The complete preemption doctrine is an exception to the well-pleaded complaint rule." *New Orleans & Gulf Coast Ry.*, 533 F.3d at 330 (citing *McAteer v. Silverleaf Resorts, Inc.*, 514 F.3d 411, 416 (5th Cir. 2008)). That doctrine allows for federal jurisdiction if a federal statute "so completely [preempts] a particular area that any civil complaint raising [the] select group of claims is necessarily federal in character." *Metro. Life Ins. Co.*, 481 U.S. at 63-64, 107 S. Ct. at 1546. To establish federal question jurisdiction under the complete preemption doctrine, the plaintiff must show that: "'(1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right;' and (3) there is a clear congressional intent that the federal cause of action be exclusive." *Mitchell v. Advanced HSC, L.L.C.*, 28 F.4th 580, 585 (5th Cir. 2022) (quoting *Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008)). LIPA does not even attempt to make the requisite showing. Nor could it. The Medicare preemption provision plainly fails to

No. 21-30331

meet the high standard for subject matter jurisdiction under a complete preemption theory. Federal question jurisdiction is lacking.

## B. Diversity Jurisdiction

This case presents a novel issue concerning the amount in controversy requirement for diversity jurisdiction in cases brought by organizations on behalf of their members. Diversity jurisdiction exists where the plaintiffs and defendants are completely diverse in citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. The only dispute here concerns the amount in controversy. In a declaratory judgment action, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*¸ 432 U.S. 333, 347, 97 S. Ct. 2434, 2443 (1977) (collecting cases). Here, the object of the litigation is the state created right of LIPA's member pharmacies to be reimbursed by Express Scripts for the provider fee they pay on all Medicare Part D prescriptions filled for Express Scripts clients.

That LIPA did not originally plead facts to support the amount in controversy requirement, because it overlooked diversity as a basis for jurisdiction, is not necessarily fatal because under 28 U.S.C. § 1653, "[d]efective allegations of jurisdiction may be amended . . . in the trial or appellate courts." In general, "[w]here jurisdiction is clear from the record, this Court has allowed direct amendments to the pleadings" under § 1653 without a remand. *Molett v. Penrod Drilling Co.*, 872 F.2d 1221, 1228 (5th Cir. 1989) (*per curiam*). Or, when the record is less clear "but there is some reason to believe that jurisdiction exists, the Court may remand the case to the district court for amendment of the allegations and for the record to be supplemented." *Id.* (collecting cases).

In its belated attempt to support diversity jurisdiction under Section 1653, LIPA seeks to allege that: (1) over nineteen million Medicare

8

prescriptions were filled in Louisiana and (2) Express Scripts has a 25% national market share. With a little math, these new allegations, combined with LIPA's allegation that its member pharmacies historically fill 45% of all prescriptions in Louisiana, yields a number well surpassing $75,000; a number that represents the estimated aggregate amount that Express Scripts shortchanges LIPA's member pharmacies each year.[3]

But the derivative nature of LIPA's lawsuit against Express Scripts precludes it from relying on that aggregate amount to satisfy the amount in controversy requirement. LIPA sued Express Scripts in a representational capacity under the theory articulated in *Hunt*, 432 U.S. at 333, 97 S Ct. at 2434. That theory sometimes permits an organization to sue over injuries suffered by its members, even though the organization itself alleges no personal injury. *See id.* at 343-44; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 494, 129 S. Ct. 1142, 1149 (2009); *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 552-58, 116 S. Ct. 1529, 1534-37 (1996). One requirement for this type of proxy suit is that the organization's "members would otherwise have standing to sue in their own right." *Hunt*, 432 U.S. at 343, 97 S. Ct. at 2441. In other words, to support its standing to sue, the organization must rely on a specified concrete injury to an identifiable member. *Summers*, 555 U.S. at 496-99, 129 S. Ct. at 1151-52.

It is true that in *Hunt*, the Supreme Court reserved the question whether an amount in controversy in a representational suit must be satisfied by at least one member of the plaintiff organization. *Hunt*, 432 U.S. at 346, 97 S. Ct. at 2443. But the Court expressed confidence that at least one of the individual growers there in fact met the threshold. *Id.* As in *Hunt*, LIPA

---

[3] We GRANT LIPA's motion to amend under 28 U.S.C. § 1653.

stands in its member pharmacies' shoes for purposes of establishing subject matter jurisdiction. Under well-settled principles of diversity jurisdiction, if one or more member pharmacies brought this lawsuit, at least one would have to satisfy the $75,000 amount in controversy requirement. *See Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 558-559, 125 S. Ct. 2611, 2620-21 (2005). Critically, such a group could not aggregate their separate and distinct claims against Express Scripts to satisfy the amount in controversy requirement. *Snyder v. Harris*, 394 U.S. 332, 338, 89 S. Ct. 1053, 1057 (1969). Thus, at least one pharmacy would have to allege that Express Scripts shortchanged it on the provider fee for over 750,000 Medicare Part D prescriptions.

We see no reason why this settled law should not govern in a proxy lawsuit like this.[4] Accordingly, we conclude that LIPA must make the same showing to satisfy the amount in controversy requirement. *See* 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3531.9.5, at 932 (3d. ed. 2008) ("In the unlikely event that an amount-in-controversy requirement would apply to suit by injured members, it does not seem likely that the organization could aggregate the injuries to several members to satisfy the requirement."). To hold otherwise would be to allow organizational litigants to circumvent the prescribed boundaries on diversity jurisdiction. Because LIPA has not adequately pleaded facts to support the

---

[4] For that matter, and lending strength to this deduction, other barriers to suit also carry over from members to organizations. *See, e.g.*, *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 25, 120 S. Ct. 1084, 1099 (2000) (statute channeling individual members' claims administratively applies in a suit by the organization on behalf of members); *ACLU v. Bozardt*, 539 F.2d 340, 343 (4th Cir. 1976) (abstention required in suit by organization if suits by individual members would face judicial abstention); *see also Allee v. Medrano*, 416 U.S. 802, 830-31, 94 S. Ct. 2191, 2208 1974) (Burger, C.J., concurring in part, dissenting in part).

No. 21-30331

amount in controversy requirement in either its original or amended complaint, federal courts lack diversity jurisdiction over this dispute.

## III.

For the forgoing reasons, LIPA's motion to amend is GRANTED. We VACATE the judgment and REMAND with instructions to dismiss.