# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 13, 2023

Lyle W. Cayce
Clerk

No. 22-40609

Dennis Burback; Ken Eddy; Mark Andersen,

*Plaintiffs—Appellants*,

*versus*

Jordan Brock; Four Oceans Holding, Incorporated; Elepreneurs U.S., L.L.C.; Elevacity U.S., L.L.C.; Sharing Services Global Corporation, *formerly known as* Sharing Services, Incorporated,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:20-CV-946

_____

Before King, Smith, and Elrod, *Circuit Judges*.
Per Curiam:[*]

Plaintiffs appeal the dismissal of their claims alleging securities fraud in connection with two investment schemes. For the following reasons, we AFFIRM.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-40609

## I. Factual Background

Plaintiffs-Appellants Dennis Burback, Ken Eddy, and Mark Andersen ("Plaintiffs") are individual investors who participated in two securities-related transactions that they allege were actually part of two fraudulent schemes. The first scheme involved the use of promissory notes (the "Note Scheme"), while the second scheme is alleged to have been related to the first and involved the purchase of stock (the "Stock Scheme").

The Note Scheme was carried out by Robert Oblon and Defendant-Appellee Jordan Brock, who are both alleged to have convinced Plaintiffs to purchase promissory notes based on false representations and insufficient disclosures. Specifically, Oblon represented to Plaintiffs that FourOceans Global, LLC ("Global"), a multilevel marketing travel company that he founded, was insolvent and on the brink of collapse and that Plaintiffs' investments were critical to its survival. In September 2015, Plaintiffs each entered into a note purchase agreement promising various forms of payment from and equity ownership in Global in exchange for $33,333. Plaintiffs allege that they were misled by Oblon and Brock as to the legitimacy of Global's business in the months leading up to their signing the note purchase agreements. By March 2016, it "became apparent to Plaintiffs" that Global "would be a failure." Around this time, Oblon transferred Global's assets to Defendants-Appellees Elevacity U.S., L.L.C. ("Elevacity") and Elepreneurs U.S., L.L.C. ("Elepreneurs"), two other multilevel marketing companies that he founded, without first informing Plaintiffs. Plaintiffs never received any return on their investment, nor the return of their principal, in connection with the Note Scheme. According to Plaintiffs, Oblon, Brock, and others instead used this money for their own personal gain and to make Ponzi-like payments to investors that were similarly situated as Plaintiffs in order to perpetuate the Note Scheme.

The Stock Scheme is alleged to have begun in about February or March 2018. Plaintiffs had made repeated requests for updates regarding the status of the Note Scheme, expressing concern as to "irregularities" surrounding their investments. In March and April 2018, Brock spoke with Eddy over the phone, stating that no irregularities existed and that he, Oblon, and John "JT" Thatch had a "plan" to convert Plaintiffs' ownership and equity interests in Global into stock in a new company, Sharing Services, Inc., founded by Oblon. Sharing Services, Inc., which would later become Defendant-Appellee Sharing Services Global Corporation ("Sharing Services"), had already acquired Four Oceans Holding, Inc. ("Holding"), Global's successor in interest; Elevacity; and Elepreneurs in October 2017.

In June 2018, Plaintiffs attended a conference call with Brock and Jeff Bollinger. During the call, Brock explained that he and Bollinger would be taking over for Oblon as Plaintiffs' point of contact. Bollinger then told Plaintiffs that Global had since been dissolved but that Plaintiffs would receive new stock in Sharing Services. Bollinger explained, though, that Plaintiffs could not directly receive Sharing Services stock and would instead need to complete their transaction with an intermediary company so as not to raise any concerns with the SEC. According to Bollinger, as a part of this plan, Plaintiffs would have to assign their interests in Global over to Custom Travel Holdings, Inc. ("Custom Travel") if they ever wanted to recover their initial investments in the Note Scheme.

Each Plaintiff subsequently entered into a subscription agreement in which additional consideration (apart from that already expended in the Note Scheme) was exchanged for stock in Custom Travel. Plaintiffs never received Custom Travel stock certificates. At some point prior to the subscription agreements' execution, Brock and Bollinger "made clear" to Plaintiffs that they knew that Custom Travel would soon be acquired by Sharing Services, explaining that this was not public knowledge, Plaintiffs were not supposed

to know about the acquisition, but that Plaintiffs would not be in violation of SEC rules. In a June 2019 conference call, Brock informed Plaintiffs that Sharing Services would not be acquiring Custom Travel and that all of Plaintiffs' investments in connection with both the Note and Stock Schemes were lost.

In December 2020, Plaintiffs filed an 11-count complaint (the "Complaint") in the United States District Court for the Eastern District of Texas naming, *inter alia*, Holding, Elepreneurs, Elevacity, Sharing Services (collectively, the "Entity Defendants"), Brock (collectively, with the Entity Defendants, the "Defendants"), Oblon, Bollinger, Thatch, Custom Travel, and Global as defendants. The Complaint asserts claims for federal securities fraud in violation of § 10(b) of the Exchange Act and SEC Rule 10b-5, and claims for statutory fraud, common law fraud, fraud by nondisclosure, unjust enrichment, civil conspiracy, aiding and abetting, accounting, constructive trust, and breach of fiduciary duty under Texas law. Brock and Thatch subsequently moved to dismiss the Complaint.

The district court partially granted the motions in September 2021 (the "First Dismissal Order"). The court first dismissed the federal securities fraud claim against Brock relating to the Note Scheme, holding that the claim was filed past the applicable five-year statute of repose. The court next dismissed the federal securities fraud claims against both Brock and Thatch relating to the Stock scheme, explaining that neither claim was sufficiently pleaded in accordance with the heightened pleading standards for fraud. The court then determined that the state law fraud claims were similarly not well pleaded and dismissed these claims against both defendants. The remaining claims brought against the movants were dismissed as well. Each claim that the court dismissed was dismissed without prejudice, save for the federal securities claim brought against Brock relating to the Note Scheme.

Plaintiffs filed an eight-count amended complaint in October 2021 (the "Amended Complaint") with factual allegations that, for the purpose of this appeal, mostly hew to those in the Complaint. Notably, though, Thatch is no longer named as a defendant in the Amended Complaint. Like the Complaint, the Amended Complaint contains claims for federal securities fraud, and state claims for statutory fraud, common law fraud, fraud by nondisclosure, unjust enrichment, civil conspiracy, and breach of fiduciary duty; the remaining claims from the Complaint have been eliminated. Plaintiffs bring a new claim for "joint and several liability for knowing participation and assisting in Brock's and Oblon's fraudulent conduct and breaches of fiduciary duties" in the amended complaint as well. Brock and the Entity Defendants subsequently moved to dismiss the Amended Complaint.

The court fully granted both motions in July 2022 with prejudice (the "Second Dismissal Order"). The court first addressed the claims brought against Brock, beginning by dismissing the lone federal securities fraud claim against him for the same reason it did in the First Dismissal Order, explaining that Plaintiffs again failed to meet the heightened pleading standards for fraud. The court likewise dismissed Plaintiffs' state fraud claims as it did in the First Dismissal Order. Turning to the Entity Defendants' motion, the court ruled that all claims pertaining to Brock's actions must be dismissed because it had already held that the Amended Complaint did not adequately plead the underlying claims against Brock. The court then dismissed the claims against the Entity Defendants as they pertained to Oblon, holding that the Amended Complaint failed to sufficiently link Oblon's actions to the Entity Defendants. The court dismissed the remaining claims against the Defendants as well.

Following the Second Dismissal Order, the parties filed a joint stipulation dismissing the remainder of the claims with prejudice. Plaintiffs

now appeal the dismissal of their federal securities fraud claim relating to the Note Scheme against Brock in the First Dismissal Order and raise various points of error in the Second Dismissal Order.

## II. Discussion

We review a district court's grant or denial of a motion to dismiss for failure to state a claim under Rule 12(b)(6) *de novo*. *Whitley v. BP, P.L.C.*, 838 F.3d 523, 526 (5th Cir. 2016). To survive such a motion, a complaint must allege enough facts, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "detailed factual allegations" are not required, the complaint must include "factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Conclusory statements or "'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint pleading facts "that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Whether the plausibility standard has been met is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Fraud claims are subject to heightened pleading requirements. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and

other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "This Court interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)). "Although Rule 9(b) expressly allows scienter to be 'averred generally', simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *Id.* (quoting *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994)). "The plaintiffs must set forth specific facts supporting an inference of fraud." *Id.* (quoting *Melder*, 27 F.3d at 1102). "Alleged facts are sufficient to support such an inference if they either (1) show a defendant's motive to commit securities fraud or (2) identify circumstances that indicate conscious behavior on the part of the defendant." *Id.* (quoting *Herrmann Holdings*, 302 F.3d at 565). "If the facts pleaded in a complaint are peculiarly within the opposing party's knowledge, fraud pleadings may be based on information and belief. However, this luxury must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Id.* (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).

Federal securities fraud claims are subject to additional pleading requirements under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which "enhances the particularity requirements of Rule 9(b)." *Id.*; *see* 15 U.S.C. § 78u-4(b). The PSLRA requires plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Additionally, under the PSLRA,

in any private action . . . in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.[1]

*Id.* § 78u-4(b)(2)(A).

## A. The Contours of the Appeal

As an initial matter, the parties disagree as to whether Plaintiffs may challenge any of the district court's holdings in the First Dismissal Order. "If [a] district court dismisse[s] [a] claim on the merits or with prejudice, [a] plaintiff may appeal that ruling without needing to include the claim in a later amended complaint." *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 787 F.3d 716, 724 (5th Cir. 2015) (citing *Williams v. Wynne*, 533 F.3d 360, 365 (5th Cir. 2008)); *see also* 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1476 (3d ed. 2023) ("A rule that a party waives all objections to the court's dismissal if the party elects to amend is too mechanical and seems to be a rigid application of the concept that a Rule 15(a) amendment completely replaces the pleading it amends. Without more, the action of the amending party should not result in completely denying the right to appeal the court's ruling."). But if a claim is dismissed without prejudice due to a "technical defect or voluntary withdrawal, [a] plaintiff forfeits the right to appeal if it files an amended complaint omitting that claim." *Lincoln Gen. Ins.*, 787 F.3d at 724 (citing *Wilson v. First Hous. Inv. Corp.*, 566 F.2d 1235, 1238 (5th Cir. 1978), *vacated on other grounds*, 444 U.S. 959 (1979)). Here, the First

---

[1] Subject to exceptions inapplicable to the case at bar. *See* 15 U.S.C. § 78u-4(b)(2)(A) & (B).

Dismissal Order dismissed the federal securities fraud claim relating to the Note Scheme against Brock with prejudice. Therefore, Plaintiffs were not required to replead that claim in order to preserve the issue of its dismissal for appeal. Accordingly, we begin by addressing the district court's dismissal of that claim, *i.e.*, Plaintiffs' only challenge to the First Dismissal Order, and then turn to Plaintiffs' appeal of the Second Dismissal Order.

## B. The First Dismissal Order

In its First Dismissal Order, the district court dismissed the federal securities fraud claim relating to the Note Scheme against Brock because it was filed outside of the time prescribed by the applicable statute of repose.

Claims arising under the Exchange Act involving "fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws . . . may be brought not later than the earlier of . . . (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658(b). The outer, five-year bound in § 1658 is a statute of repose, which "begin[s] to run on the date of the last culpable act or omission of the defendant." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 & n.1 (2018) (alteration in original) (quoting *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 505 (2017)); *Hall v. Variable Annuity Life Ins. Co.*, 727 F.3d 372, 375 n.4 (5th Cir. 2013). Any prohibited conduct or omission under § 10(b) of the Exchange Act and its attendant regulation, SEC Rule 10b-5, must occur "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Prohibited conduct or omissions are "'in connection with' the purchase or sale of securities if there is a relationship in which the fraud and the stock sale coincide or are more than tangentially related." *Roland v. Green*, 675 F.3d 503, 520 (5th Cir. 2012) (quoting *Madden v. Cowen & Co.*, 576 F.3d 957, 965–

66 (9th Cir. 2009)), *aff'd sub nom. Chadbourne & Parke LLP v. Troice*, 571 U.S. 377 (2014).

The Complaint alleges that Plaintiffs executed the note purchase agreements for the Note Scheme in September 2015, more than five years before they filed the Complaint in December 2020. Plaintiffs counter that Brock engaged in post-sale "lulling activities" to cover up the fraudulent nature of the Note Scheme, becoming the latest conduct relevant to the statute of repose and occurring within five years of the Complaint's filing. Specifically, Plaintiffs point to the transfer of Global's assets to Elevacity and Elepreneurs and the later transaction where those three entities were acquired by Sharing Services. But we fail to see how those actions (and other post-September 2015 statements or conduct) were connected to the execution of the note purchase agreements. Importantly, the pleadings do not sufficiently allege a connection between these post-sale actions and the original sale, *i.e.*, that these events were all linked as parts of a fraudulent scheme. Plaintiffs rely on allegations that are either conclusory or that the heightened pleading standards of Rule 9(b) and the PSLRA deem inadequate to establish such a connection.[2]

---

[2] Representative allegations include:

> [T]he statements (and omissions) made by these defendants . . . propagated the impression that Plaintiffs were investing in a legal and legitimate enterprise and not . . . a scheme to take their investments and transfer [Global's] assets, secretly or otherwise . . . , to Elepreneurs, Elevacity, and/or [Holding], which were ultimately sold to [Sharing Services], with no remuneration to Plaintiffs as equity owners in [Global].
>
> . . .
>
> Each Plaintiff was presented with a unified, consistent set of exaggerations, misrepresentations and omissions about their investment, how their investments would be spent, that [Global] was an ongoing, legitimate

Plaintiffs also contend that the district court erred in considering Brock's argument that the Complaint's allegations relating to the Note Scheme and not implicated by the statute of repose were not in connection with the purchase or sale of any security. According to Plaintiffs, Brock forfeited this argument because he raised it for the first time on reply below. But this mischaracterizes the nature of Brock's argument, which was consistent throughout his briefing: that the Complaint was devoid of well-pleaded allegations concerning the Note Scheme occurring within five years of its filing. In the opening brief on his first motion to dismiss, Brock argued that Plaintiffs' claim was "barred by the 5-year statute of repose" because it was "entirely based on an alleged fraudulent scheme to induce Plaintiffs to invest $33,333 in [Global] by executing separate Note Purchase Agreements . . . on or about September 10, 2015." He contended that *all* relevant allegations regarding the fraudulent scheme "occurred *before* the September 2015 transaction." Implicit in this argument is that the Complaint's remaining allegations do not relate to the Note Scheme or invoke § 10(b) and Rule 10b-5. Brock only explicitly referred to the language "in connection with the purchase or sale of any security" in his reply brief because Plaintiffs' opposition brief relied on allegations that were wholly divorced from that requirement but would otherwise fall within the five-year window. Plaintiffs' briefing on the motion is further proof that they were on notice of Brock's argument and were not prejudiced. In their initial opposition to Brock's motion, they explicitly addressed his argument regarding which culpable acts or omissions triggered the statute of repose.

_____

business, and there was no mention that the assets of [Global] would be secretly transferred to one or more entities (secret or otherwise), . . . which would be sold to [Sharing Services] with no remuneration as equity owners in [Global].

And Plaintiffs restated their arguments in a sur-reply where they incorrectly averred (as they do here) that Brock's argument had been forfeited.

The Complaint's federal securities fraud claim against Brock was correctly dismissed for being filed outside the five-year statute of repose.

### C. The Second Dismissal Order

### 1. Federal Securities Fraud Claims Relating to the Stock Scheme

The district court dismissed the federal securities fraud claim relating to the Stock Scheme against Brock, holding that the allegations in the Amended Complaint failed to meet the heightened pleading standards for fraud. Because the Entity Defendants were alleged to be implicated in this scheme through Brock under an alter ego theory of liability, the court dismissed the parallel claims brought against them as well. Plaintiffs raise two points of error in the court's analysis. First, they argue that that court inadequately addressed their theories of Defendants' "scheme liability" and "lulling activities." Second, they contend that the court did not consider an SEC filing that they assert bolstered their claims.

### a. Theories of "Scheme Liability" and "Lulling Activities"

Section 10(b) prohibits using or employing "any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe" "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b). The SEC's implementing regulation, Rule 10b-5, provides three general means of liability under § 10(b):

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the

No. 22-40609

statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

17 C.F.R. § 240.10b-5.

"To state a securities-fraud claim under section 10(b), and Rule 10b–5, plaintiffs must plead (1) a misstatement or omission; (2) of a material fact; (3) made with scienter; (4) on which the plaintiffs relied; and (5) that proximately caused the plaintiffs' injuries." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). "A fact is material if there is 'a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.'" *Id.* (quoting *Grigsby v. CMI Corp.*, 765 F.2d 1369, 1373 (9th Cir. 1985)). "Materiality 'depends on the significance the reasonable investor would place on the withheld or misrepresented information.'" *Id.* (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 240 (1988)). "[T]he required state of mind [for scienter] is an intent to deceive, manipulate, defraud or severe recklessness." *Owens v. Jastrow*, 789 F.3d 529, 535 (5th Cir. 2015) (second alteration in original) (quoting *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 251 (5th Cir. 2009)).

> Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standard of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Id.* at 536 (quoting *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 430 (5th Cir. 2002)). "To withstand a 12(b)(6) motion to dismiss, the required 'strong inference' of severe recklessness must be 'more than merely "reasonable"

or "permissible"—it must be cogent and compelling, thus strong in light of other explanations.'" *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007)). "A reviewing court therefore must 'take into account plausible inferences opposing as well as supporting a strong inference of scienter.'" *Id.* (quoting *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 533 (5th Cir. 2008)). "A complaint will survive only if the inference of scienter is 'at least as compelling as any opposing inference one could draw from the facts alleged.' '[A] tie favors the plaintiff.'" *Id.* (citation omitted) (alteration in original) (first quoting *Tellabs*, 551 U.S. at 324; and then quoting *Lormand*, 565 F.3d at 254).

In its Second Dismissal Order, the district court held that the Amended Complaint did not contain non-conclusory allegations demonstrating that any of Brock's statements were false when made or that he otherwise had knowledge of those statements' falsity. The court similarly held that Plaintiffs could not establish Brock's scienter, ruling that the Amended Complaint's allegations concerning Brock's roles with Global and Sharing Services; receipt of shares in Sharing Services, Inc. that were later converted into Sharing Services shares; "knowledge of the fraudulent schemes"; and the benefits Sharing Services received because of those schemes did not meet Rule 9(b) or the PSLRA's heightened pleading requirements. Specifically, the court correctly determined that this collection of allegations was rooted in Brock's roles with Global and Sharing Services, and that "[s]cienter in a particular case may not be footed solely on motives universal to corporate executives." *Ind. Elec.*, 537 F.3d at 544. The court also correctly ruled that the allegations pertaining to the various forms of compensation Brock received, including his shares in Sharing Services, could not create a strong inference of scienter because the Amended Complaint did not allege the value of this compensation nor how it was connected to the Stock Scheme. *See id.* ("Incentive compensation packages may be considered

in conjunction with other scienter allegations but only in an extraordinary case is it probative." (citation omitted)).

Plaintiffs contend that the district court neglected to consider extra-circuit caselaw that they argue supports the proposition that "lulling activities" may constitute evidence of scienter. In *United States v. Kelley*, 551 F.3d 171 (2d Cir. 2009) (per curiam), the defendant orchestrated a scheme in which he misled clients regarding their investments and subsequently produced fallacious account statements to lull them into believing that their investments were safer than they were. *Id.* at 172–73. The Second Circuit held that the district court did not abuse its discretion in admitting into evidence the account statements that had been produced two-to-four years following the purchase of securities, reasoning that although the dissemination of those statements alone could not establish a securities violation, they were relevant evidence because they "tended to demonstrate [the defendant's] intent to defraud his clients and the scope of the schemes he employed." *Id.* at 172, 175–76.

*Kelley* is inapposite, mainly because it is an evidentiary holding. It also lacks facts that are analogous to those in our case: there, the government had established a scheme to defraud that the district court determined involved post-sale account statements, whereas here, Plaintiffs have failed to adequately plead a fraudulent scheme (at all) to which post-sale lulling activities would attach. The other caselaw cited by Plaintiffs is similarly inapt because the court in each case was convinced of a scheme to defraud in which lulling activities were based. *See, e.g.*, *SEC v. Holschuh*, 694 F.2d 130, 143–44 (7th Cir. 1982) (district court properly considered post-sale lulling activities that were "part of a single scheme or plan . . . relat[ing] back to . . . earlier fraudulent conduct"); *United States v. Riedel*, 126 F.2d 81, 82–83 (7th Cir. 1942) ("We are satisfied, however, that the evidence shows, and rather clearly, that the scheme was not over. . . . Avoidance of detection and

prevention of recovery of money lost by the victims are within, and often a material part of, the illegal scheme."); *United States v. Jones*, 712 F.2d 1316, 1320–21 (9th Cir. 1983) ("Several investors testified that they relied on the mailings as demonstrating that [their investment] was doing well and that they had made a good investment. . . . [T]he defendants here had an interest in the bank mailings which lulled investors into complacency regarding [their investment]. The mailings furthered the fraud . . . .").

Plaintiffs do not otherwise meaningfully refute the district court's analysis; instead, they assert that it failed to account for their allegations pertaining to sections (a) and (c) of Rule 10b-5, which they refer to as "scheme liability." But the allegations that the district court deemed insufficient are the same that underpin Plaintiffs' theory of "scheme liability." Accordingly, Plaintiffs' legal theories do not disturb the district court's analysis.

### b. Consideration of the SEC Filing

Plaintiffs assert that the district court erroneously failed to consider an SEC filing that was attached to their Amended Complaint ("Exhibit M").

"[A] district court 'must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs*, 551 U.S. at 322).

Exhibit M is a Form 10-Q that Sharing Services filed with the SEC in December 2019 summarizing the firm's performance for the third quarter of that year. Plaintiffs point to two passages from Exhibit M that were quoted in the Amended Complaint and which they argue were overlooked by the district court. The first passage states that, in January 2019, Sharing Services

"became aware of an unliquidated amount of potential liability arising from a series of cash advance loan transactions . . . entered into by eight different lending sources and a Related Party entity . . . owned and/or controlled by a former Company officer." The Amended Complaint alleges that, upon information and belief, this former company officer was either Brock or Oblon. The second passage states that, in June 2019, Sharing Services

> became aware of a potential liability arising out of certain previous transactions involving the formation and capitalization of two legal entities affiliated with a Company consultant who was, at the time, considered the Company spokesperson. Without the knowledge of the Company and in contravention of the express provisions of both the Company's Bylaws and the controlling Nevada Revised Statutes, this Company consultant purportedly solicited investment funds from various persons, who at the time, were independent contractors of the Company. . . . The Company believes that it is probable that these actions have resulted in a material loss to the investing parties and is evaluating the potential exposure of these events to the Company.

The Amended Complaint alleges that, upon information and belief, this company consultant was Oblon. According to Plaintiffs, both of these passages sufficiently allege Defendants' scienter and amount to a "public acknowledgment of fraud."

We disagree. The cited passages from Exhibit M contain no ostensible fraudulent activity. And even assuming that they do, it is not apparent that they are in any way related to the Note or Stock Schemes. The Amended Complaint is likewise devoid of any well-pleaded allegations connecting these events to the Note or Stock Schemes. There was thus no need for the district

court to discuss Exhibit M or its citations in the Amended Complaint because, without more, it is wholly irrelevant to Plaintiffs' claims.[3]

Accordingly, the district court did not err in dismissing the federal securities fraud claims in the Second Dismissal Order.

### 2. State Fraud Claims Relating to the Note Scheme

Plaintiffs dispute the district court's dismissal of their state fraud claims relating to the Note Scheme due to the applicable statute of limitations.

The statute of limitations for fraud claims in Texas is four years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4). Under the discovery rule exception to the statute of limitations, accrual of a cause of action is deferred "until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." *Berry v. Berry*, 646 S.W.3d 516, 524 (Tex. 2022) (quoting *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)).

The note purchase agreements were signed more than four years before filing the Complaint, which was thus filed after the statute of limitations had already run. Plaintiffs argue, however, that the discovery rule tolled the statute of limitations because they "learned of previously unknown . . . facts" just "days before filing suit." Specifically, they point to a demand letter attached to the Amended Complaint that was sent to Brock in December 2020 shortly before the Complaint was filed. But Plaintiffs fail

---

[3] Plaintiffs argue that the district court was also required to take judicial notice of Exhibit M due to it being an SEC filing. *See Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (approving of a district court taking judicial notice of a Form 10-K filed with the SEC on a motion to dismiss). A full analysis of this issue would be redundant considering that Exhibit M was both explicitly cited in and incorporated by reference into the Amended Complaint, and our reasoning above would be equally applicable regardless.

to identify which relevant facts they became aware of within four years of filing the Complaint, including those facts they first learned upon receipt of the demand letter. Plaintiffs must provide well-pleaded facts in support of their claims, including an invocation of the discovery rule; a failure to do so deprives the defense of fair notice and, relatedly, an opportunity to respond. *See Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988) ("A defendant who has established that the suit is barred cannot be expected to anticipate the plaintiff's defenses to that bar."). Furthermore, it is not apparent that any of the facts discussed in the demand letter are related to the Note Scheme. Therefore, the district court did not err in dismissing the state fraud claims regarding the Note Scheme pursuant to the applicable statute of limitations.

## III. Conclusion

Having found no error in the district court's rulings, the judgments are AFFIRMED.